**STATE of Utah, Plaintiff and Respondent,**

v.

**Luckie John HOWELL, Defendant and Appellant.**

**No. 17407.**

Supreme Court of Utah.

June 30, 1982.

---

Gary L. Gale, Ogden, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Robert H. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant was charged with first and second degree murder and attempted murder. He was convicted of manslaughter and attempted manslaughter. On this appeal he contends: (1) there is no crime of attempted manslaughter; (2) the trial court should not have instructed the jury on the crimes of manslaughter and attempted manslaughter because they were not charged in the information; (3) the trial

court erred in excluding evidence of the turbulent character of the deceased and the lack of veracity of one of the State's witnesses; and (4) the evidence was insufficient to support the convictions.

■ On conflicting evidence, we are obliged to accept that version of the facts which supports the verdict. *State v. Coffey*, Utah, 564 P.2d 777 (1977); *State v. Howard*, Utah, 544 P.2d 466 (1975). Although the defendant recites a version of the facts which, if believed, would support a defense of self-defense to the murder charges, the record also supports the following version, which the jury apparently believed: On June 28, 1980, defendant and his companion, David Johnson, went to Pineview Dam where they encountered Bill Pledger, a member of the Sundowners motorcycle club. Defendant behaved in a loud and belligerent manner, and appeared inebriated. Pledger walked away after defendant made disparaging remarks to him about the Sundowners, with specific reference to a stabbing he had previously suffered at the hands of the Sundowners. Later that day, defendant purchased beer and gathered with others at a house in Ogden for a party. Pledger was also present. He and the defendant became engaged in an altercation. Pledger hit defendant with his fists and kicked him several times with steel-toed boots. Defendant, upon leaving the party with Johnson, told Pledger "I will get you." Defendant then obtained a gun at his mother's home and told Johnson, "If they want a war, I will give them war." Later that evening, with his gun in his belt, defendant returned to the Ogden residence. He stated that his purpose was to retrieve a pair of sunglasses he had lost while fighting with Pledger.

In response to a warning from Johnson that defendant was coming back to the residence with a gun, at least four people left the house, and the remaining five turned off most of the lights and brought the only remaining vehicle, a motorcycle, into the house to make it appear that no one was home. Defendant entered the house without knocking and went directly to the dining room. Travis Powell, Bryan Wiltfang, and John Irwin followed him into that room. Bill Pledger was no longer present.

As defendant bent over to pick up his glasses from the dining room table, Powell, wearing heavy boots, attempted to kick defendant in the head. The evidence is conflicting as to exactly what occurred, but a scuffle ensued during which defendant killed Powell by firing a shot from his .357 magnum pistol into Powell's head. Some evidence indicated that Powell was facing defendant at the time of the shooting, but other evidence indicated that Powell was on defendant's back and that defendant reached back over his shoulder and fired the gun without aiming it. Immediately after Powell was shot, John Irwin swung his fist at defendant, and defendant then fired one additional shot, wounding Irwin in his hand and abdomen. Irwin survived the wounds. He testified that defendant had stated, "I should shoot all of you," and, "I will kill everybody."

## I.

The first issue is whether there is a crime of attempted manslaughter under Utah law. Utah Code Ann., 1953, § 76–5–205(1) defines manslaughter as follows:

(1) Criminal homicide constitutes manslaughter if the actor:

(a) Recklessly causes the death of another; or

(b) Causes the death of another under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation or excuse;

(c) Causes the death of another under circumstances where the actor reasonably believes the circumstances provide a moral or legal justification or extenuation for his conduct although the conduct is not legally justifiable or excusable under the existing circumstances.

Utah Code Ann. § 76–4–101 defines an attempt as follows:

(1) For purposes of this part, a person is guilty of an attempt to commit a crime if, acting with the kind of cul-

pability otherwise required for the commission of the offense, he engages in conduct constituting a substantial step toward commission of the offense.

(2) For purposes of this part, conduct does not constitute a substantial step unless it is strongly corroborative of the actor's intent to commit the offense.

■ This Court has not previously addressed the precise issue of whether there is a crime of attempted manslaughter based on § 76–5–205(1)(c), although we have addressed that issue under subparagraph (b) of § 76–5–205(1). In *State v. Norman*, Utah, 580 P.2d 237 (1978), we held that because intent is the necessary mens rea under subparagraph (b), an attempt to commit a killing under the circumstances described in that paragraph constituted a crime. The conduct proscribed in subparagraph (c) of § 76–5–205(1) is also intentional, even though a defendant may reasonably believe that there is a moral or legal justification for the killing. Thus, both subparagraphs (b) and (c) define crimes which require intentional conduct, unlike subparagraph (a), which requires only recklessness. The ruling in *Norman* therefore necessarily applies to subparagraph (c), even though that type of manslaughter requires that the killing be based on the defendant's belief of a moral or legal justification. Accordingly, we reject defendant's contention that there is no crime of attempted manslaughter under § 76–5–205(1)(c).[1]

## II.

Defendant contends that the trial court erred in instructing, over his objection, that the jury could return verdicts on the lesser included offenses of manslaughter and attempted manslaughter. The argument is that the State must stand on the formal charges alleged in the information and that a defendant may only be tried on those crimes formally charged if the defendant wishes to hold the State to those charges—in this case first and second degree murder and attempted murder. Believing that he had a valid defense of self-defense to those charges, defendant objected to the giving of the lesser included offense instructions.

Usually issues concerning lesser included offenses arise by way of a defendant's contention that the trial court erred in not giving him the benefit of an instruction on a crime claimed to be a lesser included offense. However, on occasion, an accused may choose not to request instructions on lesser included offenses as a matter of trial strategy, usually in the belief that he can defeat the greater charge, but might not be able to defeat a lesser included offense. See *State v. Mora*, Utah, 558 P.2d 1335 (1977); *State v. Gellatly*, 22 Utah 2d 149, 449 P.2d 993 (1969). Indeed, a defendant for that reason may even oppose instructions on lesser included offenses, as in the case here, in the hope of escaping all criminal liability.

If one were to view a trial as a strictly adversarial contest or combat between two parties, one could argue that a defendant should have the right to win or lose solely on the basis of what the prosecution has charged. However, a criminal trial is much more than just a contest between the State and an individual which is determined by strategies appropriate to determining the outcome of a game. A primary purpose of a criminal trial is the vindication of the laws of a civilized society against those who are guilty of transgressing those laws. The process, however, must be based on procedures which are consonant with fairness both to the defendant and the State.

It is at best hazardous to predict just what the evidence at a trial will be. Every judge and every lawyer knows that witnesses' testimony may, for a variety of reasons, be different than expected, or partially or even wholly undermined on cross-examina-

---

1. It stands to reason that one cannot be guilty of an attempt to commit a crime unless the necessary mens rea of the completed crime is intentional conduct. To convict of an attempt, one must necessarily have the intent required to convict of the complete crime. Thus, it appears that there can be no crime of attempted manslaughter under subparagraph (a).

tion, or indeed not admitted at all for a variety of reasons.

However, when evidence of a defendant's criminal conduct has been placed before a court of justice, even though that conduct has not been specifically charged, it would be a mockery of our criminal laws for a court to ignore a proved crime and acquit on the charged crime, when the defendant is not prejudiced in presenting a full and complete defense to the proved crime. Thus, if the state fails to make out every single element of the crime charged, but nonetheless proves a lesser included crime, every element of which defendant necessarily had to defend against anyway, it would be a travesty to acquit the defendant because the lesser included crime was not charged in the information.

We are not unmindful that there is a direct and significant relationship between the crimes the State charges and the ability of the defendant to defend himself. Due process requires that a defendant have adequate notice of the charges against him and sufficient time to prepare his defenses. Necessarily, the defendant gears his defenses to the allegations of the information and the bill of particulars. It is obviously impossible to defend adequately against charges which are not specified until the moment of instructing the jury, unless the charge is a lesser and clearly included offense. Under the Utah definition of a lesser included offense,[2] there can be no unfairness to the defendant in giving a lesser included offense instruction because of lack of notice or preparation since no element may be included in the lesser offense that is not included in the greater offense. *State v. Elliot*, Utah, 641 P.2d 122 (1982); *State v. Williams*, Utah, 636 P.2d 1092 (1981).

This Court has never before directly ruled on the question of whether a trial court may, over objection, instruct on lesser included offenses. In *State v. Mora*, Utah,

558 P.2d 1335, 1337 (1977), we stated: "[i]t is undoubtedly within the prerogative of the trial court to submit included offenses if he thinks that the interest of justice so require." See also *State v. Mitchell*, 3 Utah 2d 70, 278 P.2d 618 (1955). Clearly the State has no legitimate interest in obtaining a conviction for a crime greater than that warranted by the evidence, but neither does the defendant have a right to an acquittal when the evidence, although not sufficient to establish the greater crime, is sufficient to establish a lesser included offense. The validity of this proposition has been affirmed by a number of states. E.g., *People v. Taylor*, 36 Ill.2d 483, 224 N.E.2d 266 (1967); *Rayner v. State*, Fla. 273 So.2d 759 (1973); *State v. Pankratz*, 238 Minn. 517, 57 N.W.2d 635 (1953).

Accordingly, we hold that a trial court may properly give a lesser included offense instruction, even over a defendant's objection, if there is clearly no risk that the defendant will be prejudiced by lack of notice and preparation so as to deprive him of a full and fair opportunity to defend himself.

In the instant case, the manslaughter instruction raised the issue of whether the defendant, in committing the homicide and attempting another homicide, acted with moral or legal justification. A moral or legal justification was not, of course, a prima facie element of the crime of murder as initially charged in the information. Nevertheless, the issue of self-defense was fully litigated. For all practical purposes, the defendant, in relying on self-defense as a defense to the murder charges, attempted to prove a justification for the homicide. The same basic facts were equally at issue in the manslaughter charge. The fundamental factual defense was the same under all the charges. There was, therefore, no surprise or lack of preparation necessary to

2. Utah's statute on lesser included offenses states:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein; or

(c) It is specifically designated by a statute as a lesser included offense.

litigate the "moral or legal justification" element of manslaughter. Defendant was clearly on notice and relied largely on that defense to the murder charges. What the basis was for the jury's acquittal on the murder charges was, we do not know, but there is no necessary inconsistency between the acquittal and the convictions.

### III.

Defendant next contends that the trial court improperly refused to admit evidence of specific acts of deceased to prove the turbulent and violent character of the deceased. A proffer of proof was made that deceased had committed a robbery shortly before his death and that State's witness Bill Pledger had a felony prosecution pending against him. Because defendant's defense of self defense placed the issue of deceased's character in evidence, defendant was entitled to prove the turbulent and violent character of the deceased. Evidence of a victim's turbulent and violent character is relevant to prove that the deceased may have been the aggressor, or that defendant, if he knew of those character traits, was fearful of the deceased. As Dean Wigmore stated:

> When the issue of self-defense is made in a trial for homicide and thus a controversy arises whether the deceased was the aggressor, one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action. 1 V. Wigmore, Evidence (3rd ed. 1940) § 63.

The principal issue raised is the type of evidence which may be adduced to prove the character trait in issue. We are aware of many well-reasoned cases which have held that an accused in a homicide case who defends on the ground of self-defense may prove specific incidents of prior violent conduct on the part of the victim to establish the character of the victim for turbulence and violence. E.g., *United States v. Burks*, 470 F.2d 432 (1972); *People v. Baer*, 35 Ill.App.3d 391, 342 N.E.2d 177 (1976); *Commonwealth v. Beck*, 485 Pa. 475, 402 A.2d 1371 (1979); and *Jordan v. Commonwealth*, 216 Va. 768, 222 S.E.2d 573 (1976). Such also is the rule under the Federal Rules of Evidence, Rule 405(b).

This State, however, has opted for a more limited type of evidence than can be used to prove specific instances of misconduct. To prevent the trial from being drawn off into pathways collateral to the central issue of guilt, Rules 46 and 47 of Utah Rules of Evidence do not permit evidence of specific acts of violence, short of criminal conviction, to prove the deceased's violent character.[3] In addition to evidence of a criminal conviction, reputation evidence of a victim's character may also be adduced.

■ Therefore, the most that can be argued for defendant's position that the evidence of specific acts of violent conduct should have been introduced is that they might have been relevant to defendant's fear of the victim. Even so, the evidence falls far short of making the point. Defense counsel attempted to call police officer Turner to testify that decedent committed a robbery the night before his death. In his proffer of proof, defense counsel referred to a police report made to Officer Turner by a Mr. Rowe in which Rowe indi-

---

**3.** Rule 46 of the Utah Rules of Evidence states:

When a person's character or a trait of his character is in issue, it may be proved by testimony in the form of opinion, evidence of reputation, or evidence of specific instances of the person's conduct, subject, however, to the limitations of Rules 47 and 48.

Rule 47 of the Utah Rules of Evidence states:

Subject to Rule 48, when a trait of a person's character is relevant as tending to prove his conduct on a specified occasion, such trait may be proved in the same manner as provided by Rule 46, except that (a) evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible, and (b) in a criminal action evidence of a trait of an accused's character as tending to prove his guilt or innocence of the offense charged, (i) may not be excluded by the judge under Rule 45 if offered by the accused to prove his innocence, and (ii) if offered by the prosecution to prove his guilt, may be admitted only after the accused has introduced evidence of his good character.

cated that he had had his wallet taken from him without the use of a weapon by the thief. In the initial report to Turner, Rowe stated that he was very intoxicated at the time of the robbery and, although he stated his wallet had been taken by several persons, he could not identify any of those persons. The investigative report showed that approximately a week later Rowe altered his account of the incident and stated that his wallet had been taken by only one individual, and he identified Powell as the robber. Rowe did not want any further investigation, and no charges were filed. The non-use of a weapon and the apparent non-violent taking, the inconsistent statements made by Rowe, his intoxicated state at the time of the alleged offense, and his initial inability to recall either the identity or the number of robbers fall far short of demonstrating that defendant harbored some well founded fear of the victim. Even more compelling is the lack of evidence that defendant even knew of these facts at the time of the homicide.

Defendant's additional contention that the trial court erred in excluding evidence of specific acts of violence to show lack of credibility of certain witnesses is without merit. Evidence of acts of violence, not resulting in a conviction, are not admissible on the issue of a witness' credibility. Utah Rules of Evidence, Rule 22.

### IV.

Finally, defendant contends that the evidence, as a matter of law, is insufficient to justify his conviction. Defendant's contention that the evidence adduced at trial was insufficient to support his conviction presumes that the jury was obligated to believe the evidence most favorable to defendant rather than that presented in opposition by the State. Such is not the law. The existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict. *State v. Roberts*, 91 Utah 117, 63 P.2d 584 (1937). It is within the exclusive province of the jury to judge the credibility of the witness and the weight of the evidence. *State v. Wilson*, Utah, 565 P.2d 66 (1977). It is not sufficient that on appeal an appellate court views the evidence as less than wholly conclusive. To overturn a verdict on the ground of insufficiency of the evidence, this Court would have to find that reasonable minds would entertain a reasonable doubt as to guilt. *State v. Fort*, Utah, 572 P.2d 1387 (1977). Clearly there is substantial credible evidence to support defendant's conviction, and it was not, as contended, so lacking and insubstantial that reasonable men could not have reached the verdict beyond a reasonable doubt.

Affirmed.

HALL, C. J., and OAKS, HOWE and DURHAM, JJ., concur.