**STATE of Utah, Plaintiff and Respondent,**

v.

**Thomas Peterson DYER, Defendant and Appellant.**

No. 18377.

Supreme Court of Utah.

Sept. 19, 1983.

Ronald R. Stanger, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant Thomas P. Dyer was tried by the court, sitting without a jury, for the shooting death of Nina Marie Fuelleman. He was convicted of negligent homicide [1] and sentenced to a term of one year in the Utah County Jail, together with a fine of $1,000. On this appeal, he contends: (1) the trial court is without authority to consider a lesser included offense in view of its finding of not guilty as to the charge of manslaughter; (2) negligent homicide is not a lesser included offense of manslaughter; and (3) the evidence presented at trial is insufficient to sustain a verdict of guilty to the charge of negligent homicide. We affirm.

On the evening of August 20, 1981, defendant, his brother Robert Dyer and one Nina Fuelleman went to a private club in American Fork, Utah, where all three partook of alcoholic beverages. Robert Dyer testified that he became mildly intoxicated that evening and that defendant became heavily intoxicated.[2] Sometime after 1:00 a.m. (August 21, 1981), they left the club and, at approximately 1:30 a.m., arrived at the house where defendant and Robert resided.

Upon arriving at the house, defendant announced that he was going on to his girlfriend's house for the night. Robert objected to defendant's taking the car and took the keys away from him. An argument then ensued between the brothers as they, with Nina, entered the house. Nina

---

1. A class A misdemeanor, in violation of U.C.A., 1953, § 76–5–206.

2. Robert Dyer described defendant's level of intoxication as follows: "He was in the bag. He was gone."

apparently went upstairs, while defendant and Robert continued to argue downstairs. Robert reports that he finally grabbed defendant by the throat because he "couldn't get a word in edgewise" and proceeded to strangle and hit defendant. Then, after a time, Robert "felt sorry for taking advantage" of defendant and let him go. Defendant went immediately into his bedroom, which was also on the downstairs level. Seconds later, Robert went to the doorway of the bedroom and saw defendant backing out of a closet with a .30–.30 caliber rifle in his hand. The next thing Robert remembers is an explosion from the gun.

When the gun discharged, the bullet passed approximately two feet from Robert and through the door frame. Unbeknown to either Robert or defendant, Nina had come downstairs and was standing outside the bedroom. After the bullet passed through the door frame, a fragment struck Nina in the head and killed her.

Robert immediately telephoned for emergency assistance. When the police arrived, defendant told them that he and Robert had been discussing the deer hunt and admiring the gun when it accidentally discharged. At trial, however, Robert testified that defendant's account of the incident to the police was false. He testified that the shooting was indeed accidental, but that it did not occur while discussing the deer hunt or admiring the rifle; rather, it occurred immediately after a fight between defendant and Robert.

According to Robert's testimony, defendant was holding the gun at a level somewhere between his hips and shoulders when it discharged. Further evidence adduced at trial revealed that the bullet struck the door frame five feet above the floor and, as noted above, only two feet from where Robert was standing. Notwithstanding this evidence, together with the evidence that the shooting took place only seconds after defendant and Robert had been physically fighting, Robert maintains that defendant

neither threatened him with the gun nor aimed it at him.

Robert also testified that he did not see or hear the gun being loaded by defendant. Nevertheless, the police discovered, in an open drawer next to where defendant had been standing when the gun discharged, two spent cartridges and a box of .30–.30 caliber ammunition.

A neighbor testified that she heard male voices coming from Robert and defendant's house at approximately 1:30 a.m., a minute or two after she observed people getting out of a car and entering the house. She reports that the language she heard was profane, argumentative and threatening. She also testified that just before she heard the gunshot, she heard one of the male voices say, rather distressfully, "Not that. Not that."

A gunsmith testified that the gun involved was in perfect working condition. He indicated that, although the trigger pull had been lightened from the factory setting by a gunsmith, it was still heavy enough to require a conscious effort to pull it. He further testified that in his expert opinion, this particular gun could not have been fired without pulling the trigger.

An information was filed against defendant on August 21, 1981, charging him with second degree murder.[3] On January 21, 1982, by amended information, the charge was reduced to manslaughter.[4] At the conclusion of arguments at trial, the judge informed counsel that the evidence appeared to be insufficient to prove manslaughter, but that it might be sufficient to prove the lesser included offense of negligent homicide. He instructed counsel to return the next day prepared to discuss the elements of negligent homicide. The next day, counsel presented their arguments as per the judge's request, whereupon the judge entered a verdict of guilty of negligent homicide.

**3.** A first degree felony, in violation of U.C.A., 1953, § 76–5–203.

**4.** A second degree felony, in violation of U.C.A., 1953, § 76–5–205.

It is defendant's position on appeal that the trial court acted without authority in considering the lesser included offense of negligent homicide, and further, that consideration of this offense, after acquittal of the manslaughter charge, violated his constitutional guarantees against being twice put in jeopardy.[5]

■ Defendant argues that where an acquittal is sought on an "all or nothing" defense theory, i.e., that the defendant is totally innocent of *any* wrongdoing, the trial court cannot consider a lesser included offense absent a specific request by the defendant. The sole support offered by defendant for this position is an *argument* made by plaintiff (State of Utah) in the case of *Boggess v. State.*[6] In *Boggess,* the State took the well-recognized position that the trial court was not obligated to instruct the jury on a lesser included offense where the defendant failed to request the instruction or provide any evidentiary basis therefor; it did not, however, argue, as defendant does here, that the trial court is precluded from instructing the jury on a lesser included offense where the defendant employs an "all or nothing" defense theory. Thus, the State's argument in *Boggess* is not supportive of defendant's position herein. Nor do we find defendant's position to be consistent with the law in this jurisdiction. This Court has recognized on numerous occasions the prerogative of the trial court to submit or consider lesser included offenses whenever the interest of justice so requires.[7]

■ In the case of *State v. Mitchell,*[8] the Court addressed the question as to whether the trial court had the authority to submit a lesser included offense when no request had been made by counsel:

As to the situation where instructions are not requested, and there may be some evidence touching included offenses, we believe the trial court, in its sound discretion, based on the evidence presented, and after paying due respect to the fact that, as a procedural choice deemed beneficial to his client, counsel purposely and deliberately may have concluded not to ask for instructions as to included offenses, should be allowed to determine whether or not such instructions should be given.[9]

Clearly, the trial court has the authority to submit a lesser included offense in the absence of a specific request by counsel.

The rationale behind the discretion given the trial court with respect to the submission of lesser included offenses has been stated as follows:

If one were to view a trial as a strictly adversarial contest or combat between two parties, one could argue that a defendant should have the right to win or lose solely on the basis of what the prosecution has charged. However, a criminal trial is much more than just a contest between the State and an individual which is determined by strategies appropriate to determining the outcome of a game. A primary purpose of a criminal trial is the vindication of the laws of a civilized society against those who are guilty of transgressing those laws.

. . . .

. . . [W]hen evidence of a defendant's criminal conduct has been placed before a court of justice, even though that conduct has not been specifically charged, it would be a mockery of our criminal laws for a court to ignore a proved crime and acquit on the charged crime, when the defendant is not prejudiced in presenting

---

5. The double jeopardy clause of the Fifth Amendment to the Constitution of the United States provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

6. Utah, 655 P.2d 654 (1982).

7. *See State v. Mora,* Utah, 558 P.2d 1335, 1337 (1977); *State v. Howell,* Utah, 649 P.2d 91 (1982); *State v. Close,* 28 Utah 2d 144, 499 P.2d 287 (1972).

8. 3 Utah 2d 70, 278 P.2d 618 (1955).

9. *Id.* at 75, 76, 278 P.2d 618.

a full and complete defense to the proved crime.[10]

Defendant's claim of double jeopardy arises out of an action taken by the trial judge during the course of the trial. At the conclusion of the arguments pertaining to the manslaughter charge, the judge made the following observation:

> THE COURT: Okay. I am convinced —well, let's put it another way: that the evidence is not convincing that the defendant intentionally pulled the trigger on the rifle. I'd have to find that, I think, in order to find this man guilty of the offense charged [manslaughter] beyond a reasonable doubt, and I can't do that. However, I agree with what you say with respect to the negligence involved in bringing a loaded, taking a loaded rifle under the circumstances, being intoxicated, having it on his lap, having it in a condition that it can be discharged accidentally with people around, and I believe that that is negligent homicide under Section 76–5–206. However, I'm not going to pass sentence—strike that. I'm not going to find that he's guilty of that offense this afternoon. I'm going to give you an opportunity to brief the law on that matter, and you can come back here tomorrow morning.

Defendant interprets this statement as the equivalent of a *final and determinative order of acquittal*, as to the manslaughter charge. He therefore argues that the subsequent submission and consideration of the lesser included offense constitute a second prosecution for the same offense, the very evil sought to be eliminated by the double jeopardy clause.

■ The constitutional guarantee against double jeopardy generally consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense.[11] Defendant's claim rests upon the first type of constitutional protection. We must determine, therefore, whether the trial judge's statement actually amounted to an acquittal. For the reasons hereinafter stated, we conclude that it did not.

The Court of Appeals of the State of Washington addressed this issue under almost identical circumstances in the case of *State v. McClelland.*[12] There, the trial judge expressed doubt as to the sufficiency of the evidence to convict. Without adjourning court, however, he proceeded to hear additional arguments. He then concluded that there was sufficient evidence and found the defendant guilty. On appeal, defendant alleged that the trial judge's initial expression of doubt regarding the sufficiency of the evidence against him constituted an acquittal, thus rendering defendant's subsequent conviction violative of the constitutional guarantees against double jeopardy. Affirming the trial court's decision, the Court of Appeals held:

> Negative findings are not required to support a trial court's dismissal of a criminal action for insufficiency of the evidence, but *in order to be final, the action taken must signal an end to the case.* [Emphasis added.]

> . . . .

> It is apparent that no one took these remarks as a final determination of the case, because there was no adjournment and the discussion between court and counsel continued.... *The court was still in the decision-making process.* [Emphasis added.][13]

The court further held, quoting the Washington State Supreme Court:

> Either a journal entry or more likely and preferably a formal order would have been necessary to terminate the matter.[14]

**10.** *State v. Howell, supra* note 7, 649 P.2d at 94, 95.

**11.** *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

**12.** 24 Wash.App. 689, 604 P.2d 969 (1979).

**13.** *Id.* 604 P.2d at 970, 971.

**14.** *Id.* 604 P.2d at 971, quoting *State v. Aleshire,* 89 Wash.2d 67, 568 P.2d 799 (1977).

■ The fact that *McClelland* differed from the instant case in that it involved the continuation of trial (after the judge's comment on the sufficiency of the evidence) on the original charge, rather than on a lesser included charge, is of no consequence. A lesser included offense is treated the same as its corresponding greater offense under the double jeopardy clause.[15] The consequential issue common to both cases is whether an acquittal actually took place prior to the ultimate conviction.

■ In the instant case, as in *McClelland*, there was neither a journal entry nor a formal order of acquittal. Although there was an adjournment here after the judge's oral observation, it did not signal the conclusion of the trial; its purpose was clearly to provide counsel adequate opportunity to prepare additional arguments on the lesser included offense, and thus assist the court in reaching its ultimate and final decision.

In accordance with the rules articulated above, we conclude that the trial judge's statement regarding his concern as to the adequacy of the evidence concerning the manslaughter charge was not an actual acquittal on that charge. Accordingly, defendant's constitutional rights under the Fifth Amendment double jeopardy clause were not offended by his conviction of negligent homicide.

Notwithstanding defendant's arguments thus far have been developed upon the assumption that negligent homicide is a lesser included offense of manslaughter, his next point of contention rejects that assumption.

---

**15.** *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); 21 Am.Jur.2d Criminal Law § 276 (1981).

**16.** The definition of negligent homicide, as set forth in U.C.A., 1953, § 76–5–206, reads thus: "(1) Criminal homicide constitutes negligent homicide if the actor, acting with criminal negligence, causes the death of another."

**17.** U.C.A., 1953, § 76–2–103(4).

**18.** U.C.A., 1953, § 76–5–205 defines the offense of manslaughter as follows:
(1) Criminal homicide constitutes manslaughter if the actor:

U.C.A., 1953, § 76–1–402 sets forth the requirements for lesser included offenses. It provides, in pertinent part:
(3) A defendant may be convicted of an offense included in the offense charged .... An offense is so included when:
(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged.

Defendant maintains that negligent homicide is not a lesser included offense of manslaughter because the requisite mental states of the two offenses are different and cannot be proven by the same facts or evidence.

■ The mental state that must be proven to sustain a conviction of negligent homicide is "criminal negligence."[16] Criminal negligence is defined as follows:
A person engages in conduct:
. . . .
(4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.[17]

■ To sustain a conviction of manslaughter, any one of three different mental states may be proven.[18] Of these three

(a) Recklessly causes the death of another; or
(b) Causes the death of another under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation or excuse;
(c) Causes the death of another under circumstances where the actor reasonably believes the circumstances provide a moral or legal justification or extenuation for his conduct although the conduct is not legally justifiable or excusable under the existing circumstances.

mental states, the more pertinent in this case is "recklessness." A reckless state of mind is defined as follows:

A person engages in conduct:

. . . .

(3) Recklessly, or maliciously, with respect to the circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.[19]

■ The only difference between reckless and criminally negligent conduct is that under the former, one perceives a risk and consciously disregards it, whereas under the latter, one fails to .even perceive the risk. The risk in both cases must be of such a degree that an ordinary person would not disregard or fail to recognize it. The distinction, then, is merely one of the degree of perception of the risk.

In the recent case of *Boggess v. State, supra,* the issue as to whether negligent homicide could be considered a lesser included offense of manslaughter was presented. The Court declined, however, to decide the issue because the evidence clearly established a state of mind found in manslaughter (recklessness), and no "reasonable view of the evidence as to defendant's intent . . . [would] support a verdict of guilty of negligent homicide."[20] Justice Stewart, in a concurring opinion, argued that the Court should adopt the position that negligent homicide is in fact a lesser included offense of manslaughter. He reasoned as follows:

The gravamen of the crime of negligent homicide is the same as that for reckless manslaughter. The only distinc-

tion between the two crimes is the mental state of the defendant at the time the crime was committed. In one, the actor perceives the risk but unreasonably disregards it; in the other, he simply negligently fails to perceive the risk. In tort law those two concepts are generally denominated assumption of risk and contributory negligence. Because the two concepts are so closely related, we have abolished the traditional terminology in civil cases. *Moore v. Burton Lumber Co.,* Utah, 631 P.2d 865 (1981).

Courts generally have held that negligent homicide is a lesser included offense of reckless manslaughter. *E.g., State v. Parker,* 128 Ariz. 107, 624 P.2d 304 (1980); *Lowe v. State,* 264 Ark. 205, 570 S.W.2d 253 (1978); *Till v. People,* [196] Colo. [126] 581 P.2d 299 (1978); *State v. Smith,* [185] Conn. [63], 441 A.2d 84 (1981); *People v. Strong,* 37 N.Y.2d 568, 338 N.E.2d 602, 376 N.Y.S.2d 87 (1975); *State v. Cameron,* 121 N.H. 348, 430 A.2d 138 (1981); *Aliff v. State,* Tex.Cr.App., 627 S.W.2d 166 (1982). *See State v. Mattingly,* 23 Or.App. 173, 541 P.2d 1063 (1975).[21]

And furthermore,

The difference between negligence and recklessness is not marked by a sharp analytical line. On the contrary, the difference generally lies in making a judgment as to where on a continuum of unreasonable conduct one's behavior passes from negligence to recklessness. In essence, it is a matter of judging when conduct is no longer just gray but dark gray.[22]

■ We consider this reasoning to be sound and in accordance therewith, we hold that it was proper for the trial judge to consider negligent homicide as a lesser included offense in this case.

■ Defendant's final contention is that the evidence was insufficient to sustain his conviction. To prevail on this contention, defendant must show that the evidence was

---

**19.** U.C.A., 1953, § 76–2–103(3).

**20.** 655 P.2d at 655.

**21.** *Id.* at 656.

**22.** *Id.* at 658.

so insubstantial or inconclusive that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime charged.[23]

 Defendant contends that the plaintiff's evidence failed to show that defendant acted with the requisite criminal negligence in causing the death of Nina Fuelleman. Our review of the record, however, leads to a contrary conclusion. There was ample evidence adduced at trial to establish defendant's criminal negligence. That evidence is: (1) defendant knew that Nina Fuelleman was somewhere in the house during the argument between Robert and himself, because the three had come home together; (2) immediately following the argument, defendant went to his bedroom and took out the rifle; (3) live ammunition was found near where defendant was standing when the gun fired, supporting the inference that defendant loaded the gun or knew it was loaded; (4) defendant was pointing the gun in the direction of his brother when it fired; (5) the gun could not have fired unless the trigger was pulled with a conscious effort; (6) the rifle was held at or near the shoulder, supporting the inference that defendant was aiming or attempting to aim the gun when it fired; (7) defendant lied to the police about why he was holding the gun, supporting the inference that the gun did not fire accidentally; and (8) the gun was fired while defendant held it, killing Nina Fuelleman. We consider this evidence to be substantial and sufficiently conclusive to sustain the trial court's verdict.

The conviction and judgment of the trial court are affirmed.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

23. *State v. Kerekes,* Utah, 622 P.2d 1161, 1168 (1980); *State v. Romero,* Utah, 554 P.2d 216, 219 (1976).