THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT STRONG, Also Known as OMAR ALI SHEREIFF, Appellant.

Fourth Department, May 30, 1974.

*Peter L. Yellin (Robert S. Beer* of counsel), for appellant.

*Jack B. Lazarus (Melvin Bressler* of counsel), for respondent.

WITMER, J. P. Defendant appeals from the judgment of Monroe County Court entered upon a verdict finding him guilty of manslaughter in the second degree as charged in a one-count indictment for causing the death of one Kenneth Goins. The sole ground on which defendant rests the appeal is his contention that the trial court erred in refusing to grant his request that the jury be charged that they could find him guilty of criminally negligent homicide (Penal Law, § 125.10) as a lesser included crime under the indictment.

Defendant, 57 years old, claims to be the leader in the United States of a religious sect known as Sudan Muslims, the central belief and practice of which is that the mind has power over

matter, including the body. He had about 70 followers in Rochester, Kenneth Goins being one of them. He asserted that he had the power temporarily to cause one's heart to stop and the blood to cease flowing in such person's veins, and to do other supernatural acts. He claimed that he had done such feats for 40 years without injury to a "follower". To demonstrate the efficacy of his religion and his power, it was defendant's practice to hold meetings and to put a follower through what he called "a submission". There was evidence that during such a submission he had stuck as many as-five knives into a follower without injury.

On January 28, 1972 defendant conducted such a demonstration in Rochester, and it appears that Goins volunteered to go through the ritual. Defendant testified that he first administered a prayer rite to Goins and "suspended" him so that he had no heart beat or pulse and he ceased breathing; that he then placed three knives and a hatchet in his body; that one of the knives was placed in the center of Goins' chest to a depth of two and a-half inches. When he removed the knives and hatchet Goins began to bleed from his chest, and despite all efforts to stanch the flow, Goins died. One of defendant's followers who was present at this demonstration testified that on previous demonstrations by defendant she had seen the victims bleeding a little. She testified that on the night in question, before defendant inserted the knives in Goins, Goins said to defendant, "No, Father", and defendant replied, "It will be all right, son".

A medical examiner who performed an autopsy on Goins' body testified that one of the stab wounds penetrated Goins' heart and was four and three-quarters inches deep, and that it was the cause of his death.

On these facts did the trial court err in declining to charge that the jury could find defendant guilty of a lesser crime than manslaughter second degree, to wit, criminally negligent homicide?

A person is guilty of manslaughter in the second degree when he "recklessly" causes the death of another person (Penal Law, § 125.15, subd. 1). A person acts "recklessly" with respect to a result when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur (Penal Law, § 15.05, subd. 3).

A person is guilty of criminally negligent homicide when, with "criminal negligence", he causes the death of another person (Penal Law, § 125.10). A person acts with "criminal

negligence '' with respect to a result when he fails to perceive a substantial and unjustifiable risk that such result will occur (Penal Law, § 15.05, subd. 4).

The distinction between manslaughter in the second degree and criminally negligent homicide lies in whether there is a conscious disregard of the result or only a failure to perceive the risk of the result (*People* v. *Usher,* 39 A D 2d 459, affd. 34 N Y 2d 600). The distinction between reckless conduct and criminally negligent conduct involves the mental state required for each, and not the nature of the risk. The reckless offender is aware of the proscribed risk and consciously disregards it. The criminally negligent offender, on the other hand, is not aware of the risk created and, therefore, cannot be guilty of consciously disregarding it (see *People* v. *Cruciani,* 70 Misc 2d 528).

Defendant contends that his frame of mind at the time of the act was such that he did not believe that Goins would be killed by placing the knife into him. Thus, it is defendant's contention that he was not aware of the risk involved and that he failed to perceive any risk. This being so, defendant argues that the court erred in refusing to charge the lesser crime of criminally negligent homicide.

The principle is well settled in New York that if upon any view of the facts, defendant could be found guilty of a lesser degree or an included crime, the Trial Judge must submit such lower offense to the jury (*People* v. *Mussenden,* 308 N. Y. 558, 561–562). Whether '' a defendant could properly be found guilty of a lesser degree or an included crime '' depends on whether '' there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one '' (p. 563). (See, also, *People* v. *Asan,* 22 N Y 2d 526; *People* v. *Usher,* 39 A D 2d 459, affd. 34 N Y 2d 600, *supra*; *People* v. *Wall,* 34 A D 2d 215, affd. 29 N Y 2d 863.) Such refusal is justified only where under no possible view of the facts could the jury find a lesser degree of the crime charged (*People* v. *Malave,* 21 N Y 2d 26; *People* v. *Richardson,* 36 A D 2d 25).

On no view of the evidence in this record is there warrant for a verdict of guilty of criminally negligent homicide, since there is no basis on which the jury could have found that defendant failed to perceive the risk inherent in his actions. Defendant unequivocally admitted to stabbing Goins in the chest at least to a depth of two and a half inches. To suggest that Goins' death was the result of negligence simply defies logic and common sense. Defendant's belief in his superhuman powers,

whether real or simulated, did not result in his failure to perceive the risk, but, rather, led him consciously to disregard the risk of which he was aware. A verdict finding such a conscious disregard of a substantial and unjustifiable risk was the only verdict that the jury could return on the evidence in this record. As was stated in *People* v. *Mussenden* (*supra*, p. 563), "a court should avoid doing anything, such as submitting lower crimes in an inappropriate case, that would constitute an invitation to the jury to foreswear its duty and return a compromise or otherwise unwarranted verdict".

Accordingly, the trial court properly refused to charge that the jury could find defendant guilty of the lesser crime of criminally negligent homicide, and the judgment should be affirmed.

CARDAMONE, J. (dissenting). I dissent because in my view the defendant was entitled to a charge down to criminally negligent homicide. It is a settled rule, as a concomitant of the amplitude of the jury's function, that the Trial Judge should charge the lesser included crime except in those rare cases where every possible hypothesis but the higher crime is excluded. The reason for this is to permit juries a latitude, not hemmed in by logic, so that they may, on almost any excuse and as a part of their mercy dispensing function, convict on a lower degree of crime although conviction of a higher degree is clearly warranted. (*People* v. *Malave*, 21 N Y 2d 26, 29; *People* v. *Mussenden*, 308 N. Y. 558, 562.) Further, the defendant is entitled to the most favorable view of the evidence (*People* v. *Usher*, 39 A D 2d 459, affd. 34 N Y 2d 600), upon his request for a charge down. In that connection the record reveals that the defendant testified that there was no danger to the victim who voluntarily submitted to this "religious rite". His lack of perception of the risk was ostensibly corroborated by other witnesses who participated in and witnessed this and similar rites where apparently no one suffered ill effects. While such a lack of perception perhaps does not comport with what a reasonable person would perceive, nonetheless, the governing statutes do not measure the defendant's perception by an objective standard of what a "reasonable" man would perceive (Penal Law, §§ 125.10; 15.05, subd. 4); but rather, permit a "subjective" standard as to what the defendant in fact perceived. Such is a question of fact for the jury. The defendant's conduct and claimed lack of perception, if believed, would make him guilty of criminally negligent homicide and it was, therefore, error for the trial court to refuse to charge this lesser

degree of homicide (*People v. Asan*, 22 N Y 2d 526; *People v. Usher, supra*).

MOULE, MAHONEY and DEL VECCHIO, JJ., concur with WITMER, J. P.; CARDAMONE, J., dissents in a memorandum and votes to reverse the judgment and grant a new trial.

Judgment affirmed.