**STATE of Utah, Plaintiff and Respondent,**

v.

**David James HOWARD, Defendant and Appellant.**

**No. 15897.**

Supreme Court of Utah.

June 22, 1979.

David J. Knowlton, Ogden, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Defendant was convicted in a jury trial of two counts of criminal homicide, viz., second degree murder and manslaughter. His sole contention before us is the district court erred by refusing his requested in-

4. 73 Am.Jur.2d, Statutes, Sec. 253.

struction on the lesser included offense of negligent homicide. We affirm. All statutory references are to Utah Code Ann., 1953, as amended.

The facts are essentially undisputed. In late summer of 1977, animosity developed between two former friends, Marilyn Rust and Tammy Johnson. The feud between the girls involved their friends, including the defendant, who was a friend of Marilyn Rust.

In November of 1977, Marilyn found two threatening notes on her automobile. Defendant thereafter brought a 30–06 rifle and a .22 pistol to Marilyn's apartment, leaving them there fully loaded.

Late in November, defendant slashed the tires on Tammy Johnson's car; subsequently, the tires on Marilyn's car were slashed. On January 13, 1978, defendant slashed tires on various automobiles belonging to Tammy and her husband, Danny Johnson.

The next day defendant, expecting trouble, brought a loaded 12-gauge shotgun to Marilyn's apartment. Defendant and a friend, Paul Onstadt, remained at the apartment with Marilyn throughout the evening of January 14. At approximately midnight, Tammy and Danny Johnson, Decie Johnson, and Eddy Foy came to the apartment to see Marilyn. An argument over the tire slashing ensued which lasted approximately one hour. During the argument, two friends of Marilyn and defendant, Liz Stoker and Stan Crager, arrived at the apartment. During the entire argument, defendant stood by the couch in the living room holding the shotgun in plain view at his side, indicating at one point that it was loaded.

After the argument, as Tammy, Danny, Decie, and Eddy were leaving, Tammy made an obscene remark to defendant. He in turn made an obscene suggestion to her which was heard by her husband, Danny, as he was walking downstairs. Danny ran back to the apartment door and told Marilyn to open it, which she did. Danny stood in the doorway and demanded that defendant come out and fight; defendant, however, had no intention of fighting Danny

since Danny was larger than defendant. Danny then stated he would count to five and if defendant did not come out in the hall, Danny would come in and get him. When Danny reached the count of five, he lunged through the door toward defendant, who in turn aimed the shotgun toward Danny and fired. At that second, Stan Crager, who had been standing in the room in front of defendant, jumped in front of Danny in an effort to prevent a fight, and was hit in the back by the shotgun blast. Danny, knocked off balance when Stan fell against him, veered in the direction of the kitchen door on the other side of the room by which stood the 30–06 rifle. As he did so, defendant pumped the shotgun and fired again, hitting Danny in the back. Both Stan and Danny subsequently died from their wounds.

Defendant was charged with first degree murder on two counts in the amended information. He pleaded not guilty to both counts, contending at trial he acted in self-defense.

In its instructions to the jury, the court included the definitions of the lesser included offenses of second degree murder and manslaughter, but refused to include defendant's requested instruction on negligent homicide. The relevant definitional provisions of the code are as follows:

76–5–203. Murder in the second degree.—(1) Criminal homicide constitutes murder in the second degree if the actor:

(a) Intentionally or knowingly causes the death of another; or

(b) Intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another; or

(c) Acting under circumstances evidencing a depraved indifference to human life, he recklessly engaged in conduct which creates a grave risk of death to another and thereby causes the death of another; or

(d) * * *

76–5–205. Manslaughter.—(1) Criminal homicide constitutes manslaughter if the actor:

(a) Recklessly causes the death of another; or

(b) Causes the death of another under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation or excuse;

(c) Causes the death of another under circumstances where the actor reasonably believes the circumstances provide a moral or legal justification or extenuation for his conduct although the conduct is not legally justifiable or excusable under the existing circumstances.

76–5–206. Negligent homicide.—(1) Criminal homicide constitutes negligent homicide if the actor, acting with criminal negligence, causes the death of another.

76–2–103. Definitions of "intentionally, or with intent or willfully"; "knowingly, or with knowledge"; "recklessly, or maliciously"; and "criminal negligence or criminally negligent."—A person engages in conduct:

(1) Intentionally, or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result.

(2) Knowingly, or with knowledge, with respect to his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or the existing circumstances. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(3) Recklessly, or maliciously, with respect to circumstances surrounding his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordi-nary person would exercise under all the circumstances as viewed from the actor's standpoint.

(4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

Also relevant is the following provision:

76–5–204. Death of other than intended victim no defense.—In any prosecution for criminal homicide, evidence that the actor caused the death of a person other than the intended victim shall not constitute a defense for any purpose to criminal homicide.

We have often stated our position where the contention is that an instruction on a lesser included offense should have been given. In *State v. Dougherty*, Utah, 550 P.2d 175, 176 (1976), we stated:

When an appellant makes an issue of a refusal to instruct on included offenses, we will survey the evidence, and the inferences which admit of rational deduction, to determine if there exists reasonable basis upon which a conviction of the lesser offense could rest.

In *State v. Hendricks*, 596 P.2d 633 (1979), we noted:

It is a basic legal premise that a defendant in a criminal case is entitled to have his theory of the case presented to the jury. However, the right is not absolute, and a defense theory must be supported by a certain quantum of evidence before an instruction as to an included offense need be given.[1]

---

1. See also *State v. Close*, 28 Utah 2d 144, 499 P.2d 287 (1972); *State v. McCarthy*, 25 Utah 2d 425, 483 P.2d 890 (1971); *State v. Gillian*, 23 Utah 2d 372, 463 P.2d 811 (1970); *State v. Castillo*, 23 Utah 2d 70, 457 P.2d 618 (1969).

■ Applying these principles to the case at hand, we believe there is no reasonable basis under the facts in this case which would justify a conviction of negligent homicide. As to Count I, defendant's conviction for second degree murder, the facts leave no room to suggest that, according to a reasonable view of the evidence, defendant negligently fired the shotgun when he pumped the gun, aimed at Danny Johnson, and fired as Johnson was heading toward the kitchen door of the apartment. Defendant himself presented no evidence tending to show he was unaware of a "substantial and unjustifiable risk" that the death of Johnson would occur by firing the shotgun at him. The evidence clearly does not support a negligent homicide instruction as to Count I.

Regarding Count II, defendant contends evidence presented established that the jury reasonably could have concluded defendant was unaware of a substantial and unjustifiable risk that Stan Crager would be killed in the affray. Specifically, defendant contends he was solely concerned with defending himself for an expected attack by Danny Johnson, as Johnson stood at the apartment door and counted to five. Defendant testified he knew Crager was in the room when he fired at Johnson, but he did not know where.

Thus, he asserts, since he testified he was unaware at the time he shot at Johnson that Crager would jump in the line of fire, the jury could have reasonably come to the conclusion he ought to have been, but in fact was unaware of a substantial and unjustifiable risk that Crager would be killed.

We must reject defendant's argument for the following reason: The difference between the minimum required *mens rea* of recklessness for manslaughter and criminal negligence for negligent homicide is simply whether the defendant was *aware, but consciously disregarded* a substantial risk the result would happen, or was *unaware but ought to have been aware* of a substantial risk the result would happen. This distinction is purely one of subjective intent in the mind of the actor;[2] and, as we have noted a question of fact to be decided by the jury if *any reasonable view of the evidence* supports the lesser included offense. However, the question before us is not defendant's state of mind as to Crager, whom he accidentally shot, but as to Johnson at whom defendant admits he aimed the shotgun when he fired the first time. Section 76–5–204, given above, requires the focus of the intent question not upon the actual victim, but upon the *intended* victim, who in this case was Danny Johnson. Thus, the question before us is whether under any reasonable view of the evidence, defendant was unaware, but ought to have been aware, of a substantial risk that Danny Johnson, the intended victim, would be killed by the shotgun blast.

We believe that question must be answered in the negative, since no evidence supports the conclusion that the defendant was unaware of a substantial risk of death to Johnson, if he fired the shotgun at him. Indeed, it is consistent with defendant's assertion of self-defense that he intended to shoot Johnson, believing he was justified in so doing to protect his own life. No evidence was presented which would warrant an instruction of negligent homicide, especially since defendant himself admitted at trial he aimed at Johnson, and that "I usually hit what I aim at."

The jury could have reasonably come to the conclusion that defendant was at least reckless in shooting at Johnson and hitting Crager, or that defendant intentionally or knowingly shot at Johnson and hit Crager in the mistaken belief he was justified, according to the definition of manslaughter. Applying § 76–5–204, the fact that Crager instead of Johnson was shot becomes irrelevant. The court instructed the jury regarding § 76–5–204 and properly refused the

2. *People v. Usher*, 39 A.D.2d 459, 336 N.Y.S.2d 935 (1972); *People v. Strong*, 45 A.D.2d 78, 356 N.Y.S.2d 200 (1974).

requested instruction on negligent homicide.

CROCKETT, C. J., and WILKINS, HALL and STEWART, JJ., concur.