STATE of Utah, Plaintiff and Respondent,

v.

Darrell Lawrence WESSENDORF, Defendant and Appellant.

No. 880358–CA.

Court of Appeals of Utah.

July 18, 1989.
Certiorari Denied Sept. 15, 1989.

J. MacArthur Wright (argued), John L. Miles, St. George, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Barbara Bearnson (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, GARFF and GREENWOOD, JJ.

OPINION

GREENWOOD, Judge:

Darrell Lawrence Wessendorf appeals from his conviction, after a bench trial, of manslaughter, a second degree felony in violation of Utah Code Ann. § 76–5–205 (Supp.1989). Wessendorf appeals, claiming his acts constituted, at most, negligent homicide, not manslaughter, and that the death of Stevie Kirkwood was caused by the intervening treatment or negligence of medical personnel.

On May 7, 1987, Willis Kelton picked up Wessendorf at the home of Jeri Ann and Marshall Kirkwood in LaVerkin, Utah, where Wessendorf rented an upstairs room. As Kelton and Wessendorf were traveling toward Cedar City, they saw a great basin rattlesnake by the side of the road. Kelton stopped the car and Wessendorf got out and used a tire iron to put the snake into a bag. Kelton and Wessendorf returned to the Kirkwood home where Wessendorf tied the bag containing the

snake to a tree. Wessendorf and Kelton then left to go to Cedar City.

Kelton and Wessendorf returned to LaVerkin that same afternoon, after consuming some tequila. When Wessendorf arrived back at the Kirkwood home, he released the forty-two inch long snake. The snake tried to crawl off a few times and coiled up every time dogs in the yard approached. As a result, Wessendorf, for the most part, sat with the snake coiled up underneath his leg.

Ms. Kirkwood returned home with her two-year-old daughter, Stevie, about 3:00 p.m. and was confronted by Wessendorf holding the snake around his neck and allowing it to move around his body. Wessendorf teased Ms. Kirkwood with the snake in an attempt to get her to touch it. Wessendorf persisted in this conduct even though Ms. Kirkwood was obviously frightened by the snake. Wessendorf also kissed the snake's head, put it down his pants, and approached several friends and neighbors with the snake. Ms. Kirkwood told her six-year-old son, who had just returned from school, to go to a neighbor's house for safety. She told Stevie to go to her bedroom and play, where she would be out of Wessendorf's sight. Ms. Kirkwood walked across the street to the Church residence. Wessendorf followed with the snake around his neck. Mr. Church warned Wessendorf that the snake was dangerous and could bite and kill someone. Wessendorf told Mr. Church not to worry about it.

Later that day, Wessendorf took the snake into the Kirkwood home over the objections of Ms. Kirkwood. Wessendorf walked into the house with the snake draped across his shoulders and proceeded to the bathroom where Stevie was playing with a kitten. While Stevie was stroking the kitten with one hand, Wessendorf took her left hand and stroked the snake with it. Wessendorf then stepped behind Stevie and draped the snake's tail over her left shoulder. Simultaneously, Wessendorf held the snake four or five inches below its head because he did not want it to feel restrained. Stevie screamed and tried to get away. Wessendorf attempted to take the kitten away from Stevie so that she could put both of her hands on the snake. Meanwhile, Ms. Kirkwood got a gun from her bedroom and started toward the bathroom. Upon seeing the snake draped across Stevie, Ms. Kirkwood ordered Wessendorf to remove the snake immediately. Wessendorf ignored her repeated requests. Finally, Wessendorf turned to look at Ms. Kirkwood and felt the snake move in his hand. He looked back at Stevie and saw the snake attached to her neck. Realizing that Stevie had been bitten, Wessendorf pulled the snake off her and asked Kelton to take the snake outside. Ms. Kirkwood dropped the gun and attempted to get her daughter. Wessendorf closed the bathroom door, lacerated Stevie's shoulder and attempted to suck the snake venom from the wound. Ms. Kirkwood called the police and went outside and shot the snake. Wessendorf came out of the house carrying Stevie and headed toward his truck to get his snake bite kit. Ms. Kirkwood took Stevie from Wessendorf and placed her in the car. A scuffle developed between Wessendorf and Kelton about whether Kelton or Wessendorf should accompany Ms. Kirkwood to the hospital. Kelton eventually went with Ms. Kirkwood to the hospital.

Upon arriving in the hospital emergency room, Stevie was treated by four physicians who administered antivenin through an intravenous line. Stevie showed signs of improvement, but suddenly suffered respiratory failure and cardiac arrest.

Wessendorf was charged with second degree murder, a second degree felony in violation of Utah Code Ann. § 76-5-203(1)(c) (Supp.1989). At trial, Dr. Edwin Sweeney, the Utah State Medical Examiner who conducted the autopsy on Stevie, stated that the cause of death was venomous snakebite. Dr. Richard C. Dart, an expert in the treatment of venomous snakebites, testified that Stevie died from the snakebite and that medical personnel did not cause Stevie's death.

At the conclusion of the trial, the trial court analyzed the elements of second degree murder and manslaughter and applied them to the facts of the case. After find-

ing that Wessendorf did not have the requisite mens rea for second degree murder, the court examined whether Wessendorf acted with recklessness, the mens rea for manslaughter. It found that Wessendorf was aware that placing the snake on Stevie's shoulder exposed her to a substantial and unjustifiable risk of death. The court then listed numerous factors which demonstrated Wessendorf's awareness of the risk, including Wessendorf's caution in capturing the snake with a tire iron, placement of the snake in a bag, Mr. Church's warnings about the danger of the snake, Ms. Kirkwood's apparent fear of the snake, and Wessendorf's observation that the snake coiled in the presence of other animals. In view of these and other facts, the court found that Wessendorf knew, but consciously disregarded the risks in placing the snake in close proximity to Stevie. Accordingly, the court concluded that Wessendorf possessed the requisite mens rea for manslaughter, recklessness, and was guilty of manslaughter. Finally, the court stated that all the experts agreed that nothing the doctors did or did not do caused Stevie's death and that Wessendorf's act of placing the snake close enough to Stevie to inflict the bite was the cause or the concurrent cause of her death.

## I. MANSLAUGHTER v. NEGLIGENT HOMICIDE

Wessendorf's first assertion of error is that he was erroneously convicted of manslaughter and should have been acquitted or convicted of negligent homicide. Wessendorf claims that he did not act recklessly, as required for manslaughter, but, at most, acted with criminal negligence, the standard for negligent homicide.

According to Utah Code Ann. § 76–5–205 (Supp.1989), "[c]riminal homicide constitutes manslaughter if the actor: (a) recklessly causes the death of another...." In comparison, "[c]riminal homicide constitutes negligent homicide if the actor, acting with criminal negligence causes the death of another." Utah Code Ann. § 76–5–206 (1978). Thus, the mens rea for manslaughter is recklessness, while the mens rea for negligent homicide is criminal negligence.

A person acts recklessly when:

he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances surrounding his conduct exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Utah Code Ann. § 76–2–103(3) (1978). However, a person acts with criminal negligence:

when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

Utah Code Ann. § 76–2–103(4) (1978).

Wessendorf argues that in determining that he acted recklessly, the trial court erred in applying an objective standard of what a "reasonable man" would perceive. The Utah Supreme Court has stated that the mens rea of recklessness for manslaughter requires that defendant be aware of but consciously disregard a substantial risk the result would occur. *State v. Howard*, 597 P.2d 878, 881 (Utah 1979); *see also State v. Dyer*, 671 P.2d 142, 148 (Utah 1983). In contrast, the mens rea of criminal negligence constituting negligent homicide is that defendant was unaware of but ought to have been aware of a substantial risk the result would occur. *Howard*, 597 P.2d at 881. Although the *Howard* court stated that the distinction between the mens rea for each crime is one of intent, *id.*, the court in *Dyer* further clarified that the distinction involves the degree of perception of risk. *Dyer*, 671 P.2d at 148. Further, the court stated that degrees of perception cannot be clearly delineated, but operate on a continuum. *Id.* Both crimes, therefore, necessitate evaluation of the de-

fendant's state of mind. In addition, in *Dyer*, the court recognized that the statutory language includes application of an objective standard, i.e., that "[t]he risk in both cases must be of such a degree that an ordinary person would not disregard or fail to recognize it." *Dyer*, 671 P.2d at 148. Therefore, according to case law and the statute, to constitute manslaughter, the risk must be of such a nature that an ordinary person who was aware of the risk would not disregard it.

With these legal principles in mind, we examine the trial court's factual findings to determine whether they are clearly erroneous and whether the findings support the trial court's legal conclusion that Wessendorf committed manslaughter. The trial court's findings, entered after a bench trial, will not be overturned unless they are clearly erroneous, i.e., against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). In assessing the trial court's legal conclusions, we apply a correction of error standard. *State v. Johnson*, 771 P.2d 326, 327 (Utah Ct.App.1989).

In the instant case, the trial court found that Wessendorf was aware that there was a substantial and unjustifiable risk of death to Stevie in his act of placing an unrestrained rattlesnake on Stevie's shoulder. The court enumerated several facts which established Wessendorf's awareness of the risk. Wessendorf originally picked up the snake with a tire iron, transported the snake in a bag, and was warned by Mr. Church and others that the snake was dangerous and might bite or kill someone. In addition, others, including Ms. Kirkwood, were apprehensive and exhibited fear of the snake. Further, Wessendorf kept a snakebite kit in his truck, indicating a clear awareness of the risk of a snakebite. After the snake bit Stevie, Wessendorf slammed the bathroom door and tried to remove the venom, again demonstrating an awareness of the danger of a snakebite. Wessendorf also argued with Ms. Kirkwood because he wanted to continue to remove the venom as they drove to the hospital. Moreover, rattlesnakes had bitten Wessendorf several times before and thus he knew that rattlesnakes bite. He was also aware that the snake coiled when dogs approached and that Stevie was holding a kitten at the time he draped the snake around her. Finally, Wessendorf was aware that the snake's presence upset others and that someone might startle the snake and cause it to strike or bite. In view of these facts, the court found that Wessendorf was aware of substantial risks of injury or death and consciously disregarded these risks in placing the snake in close proximity to Stevie.

 These findings are amply supported by the testimony at trial, and we defer to the trial court's advantageous position in assessing the credibility of the witnesses and weighing the testimony. *State v. Kelly*, 770 P.2d 98, 99 (Utah 1988). In light of these facts, the trial court did not err in finding Wessendorf acted recklessly, as defined in section 76-2-103(4). In addition, the trial court did not err in referring to an objective as well as a subjective standard, as both are involved in applying the manslaughter statute.

## II. INTERVENING MEDICAL TREATMENT

 Wessendorf also contends the medical treatment Stevie received was an intervening cause of death and should constitute a defense to his manslaughter conviction. In homicide cases, the State bears the burden of proving beyond a reasonable doubt that the victim's death resulted proximately from the defendant's act or omission. *State v. Bassett*, 27 Utah 2d 272, 495 P.2d 318, 319 (1972). In addition, intervening medical error is not a defense where the defendant has inflicted a mortal wound upon another. *State v. Velarde*, 734 P.2d 449, 456 (Utah 1986).

Wessendorf claims the instant case is distinguishable from *Velarde* in that he did not inflict a mortal wound upon Stevie. Wessendorf asserts that because the weight of the evidence establishes that rat-

tlesnakes rarely cause death, he did not inflict a mortal wound upon her.

However, the trial court found that "all the experts agree that nothing the doctors did or did not do caused Stevie's death" and that Wessendorf's act of placing the snake close enough to Stevie to inflict the bite was the cause or the concurrent cause of her death. At trial, Utah State Medical Examiner, Dr. Sweeney, testified that the cause of Stevie's death was the venomous snakebite. In addition, Wessendorf's expert witness, Dr. Dart, testified that Stevie died from the snakebite and medical personnel did not do anything to cause Stevie's death. Because the trial court's finding is supported by the evidence, it is not clearly erroneous. The State proved beyond a reasonable doubt that the snakebite, not the medical treatment, was the proximate cause of Stevie's death. Wessendorf, therefore, is precluded from claiming intervening medical error as a defense.

Affirmed.

DAVIDSON and GARFF, JJ., concur.