**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert B. MORGAN, Defendant and Appellant.**

**No. 910449–CA.**

Court of Appeals of Utah.

Dec. 17, 1993.

---

Stephen A. Laker, Ogden, for defendant and appellant.

Jan Graham and J. Frederic Voros, Jr., Salt Lake City, for plaintiff and appellee.

Before GREENWOOD, ORME and RUSSON, JJ.

## OPINION

ORME, Judge:

Defendant Robert Morgan appeals, on various grounds, his jury conviction for man-slaughter, a second degree felony, in violation of Utah Code Ann. § 76–5–205 (1990). We affirm.

## FACTS

We state the facts in the light most favorable to the jury's verdict. *State v. Hamilton*, 827 P.2d 232, 233–34 (Utah 1992). Defendant's daughter, Ashlee, was three and a half months old when she bled to death from internal injuries on September 10, 1990. According to the medical examiner, one or two severely inflicted blows to the child's abdomen caused a substantial laceration of her liver, as well as injuring other abdominal organs. The liver laceration in turn caused a massive hemorrhage, which resulted in Ashlee's death.

The autopsy revealed that Ashlee had also suffered other injuries. The examiner discovered a hemorrhage in Ashlee's right temple and a fracture of her temporal bone, which he testified was consistent with a blow of moderate to severe force struck by a human hand, and was a contributing cause of her death. In addition, Ashlee's cheeks were both bruised with what appeared to be slap marks, apparently inflicted within hours of her death.

The medical examiner also discovered five partially healed rib fractures, close to where the ribs join the vertebral column. The fractures were at least seven to ten days old, but not more than two months. The examiner testified that such fractures are common in child abuse cases. According to the testimony, none of Ashlee's injuries was consistent with accidental infliction. In fact, two experts testified that Ashlee had suffered from "battered child syndrome."

Ashlee was born on May 23, 1990. From that date through July 28, Ashlee's mother, Rainey Youngberg, was the baby's primary caregiver, although Rainey's mother, Mary Lebro, would babysit Ashlee on occasion. Rainey testified that during this time she observed no indication of abuse such as injuries or bruises, and that Ashlee's grandmoth-

er "always took really good care of her when she was with her." However, on July 28, Rainey began working outside the home. From that time on, either defendant or Mary Lebro would watch Ashlee, and during the period from July 29 through August 13, defendant watched the child "most of the time."

Rainey took Ashlee in for a medical checkup on August 1, at which time the doctor said the baby was fine. However, later in the month, Rainey noticed a change in Ashlee's crying patterns. The child cried less at night than she previously had, but she cried a lot more during the day. Rainey also testified that during this period Ashlee cried when she was being burped and when she was picked up.

On September 10, the date of Ashlee's death, Rainey got the child up and played with her. Rainey rubbed Ashlee's head, as was her custom, but did not notice any tender spots. Rainey also testified that the child was not "fussy," and that she napped a couple of hours in the morning. In addition, Rainey and her mother played with Ashlee that afternoon, and Rainey noted that "she was really playful." Rainey had to work that night and asked her mother to babysit, but she was unable to do so. At defendant's insistence, Rainey asked her mother again, but she still declined. Therefore, it was necessary that defendant watch the child that night.

According to defendant's testimony, while he was changing Ashlee's dirty diaper, he became frustrated with her crying and "struck her once in the chest with the right palm of his hand, with about medium force." Defendant then gave her some Tylenol and put her down to sleep. About an hour later, defendant went to check on Ashlee because

he "felt bad" about hitting her. When he picked her up, "she was limp," and he could not tell if she was breathing. Defendant then called the hospital emergency room and told a nurse that he feared he had given the baby too much Tylenol. The nurse asked defendant how much he had given her, and, upon learning the dosage, told defendant that Ashlee should be alright. However, defendant did not tell the hospital that he had hit the baby, or that the baby was limp. Defendant then called Rainey, after which he took the baby to her work. The two of them then took the baby to the hospital. Hospital personnel took Ashlee from her parents. They returned shortly, saying there was nothing they could do.

■ Defendant was charged with second degree murder, and the jury was also instructed on the lesser included offenses of manslaughter and negligent homicide. The jury found defendant guilty of manslaughter. Defendant appeals his conviction, claiming that the State failed to show the requisite intent for manslaughter, that evidence of earlier injuries to the child should not have been admitted, and that the court erred in selecting jury members and in denying his motion for a mistrial based on the dismissal of a juror for misconduct.[1]

## STANDARD OF REVIEW

When appellant challenges the sufficiency of the evidence supporting a jury verdict in a criminal trial, this court "must view the evidence in the light most favorable to the verdict and will interfere only when the evidence is so lacking and insubstantial that a reasonable person could not possibly have reached a verdict beyond a reasonable doubt." *State v. Tanner,* 675 P.2d 539, 550

---

1. Defendant also claims that the court erred in denying his request for specific jury instructions and that he was denied the effective assistance of counsel. However, the record on appeal does not include a copy of the proposed instructions, nor does defendant recite the text of any alternative instructions in his brief. We cannot review the denial of a requested instruction unless it is included in the record. *State v. Cash,* 727 P.2d

218, 218 (Utah 1986); *State v. Knill,* 656 P.2d 1026, 1029 (Utah 1982).

Regarding defendant's allegation that he was denied effective assistance of counsel, we agree with the State that his claim is without merit, and therefore decline to address it. *See State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989); *State v. Vigil,* 840 P.2d 788, 795 (Utah App.1992), *cert. denied,* 857 P.2d 948 (Utah 1993).

(Utah 1983). *See State v. Hamilton,* 827 P.2d 232, 236 (Utah 1992).

■ We review the trial court's decision to admit evidence as a question of law, employing a correction of error standard, where the underlying facts are not in dispute. *State v. Ramirez,* 817 P.2d 774, 781–82 n. 3 (Utah 1991); *Provo City v. Warden,* 844 P.2d 360, 362 (Utah App.1992). *See also State v. Thurman,* 846 P.2d 1256, 1270 n. 11 (Utah 1993).

■ The denial of "a motion to dismiss prospective jurors for cause is within the sound discretion of the trial court," and thus will not be reversed absent an abuse thereof. *State v. Boyatt,* 854 P.2d 550, 552 (Utah App.), *cert. denied,* 862 P.2d 1356 (Utah 1993). *See State v. Gotchall,* 782 P.2d 459, 462 (Utah 1989). Nor will we "overturn the trial court's decision to grant or deny a motion for a mistrial absent an abuse of discretion." *State v. Swain,* 835 P.2d 1009, 1010 (Utah App.1992) (citing *State v. Speer,* 750 P.2d 186, 190 (Utah 1988)).

## INTENT FOR MANSLAUGHTER

Defendant first claims that the State failed to show that he possessed the intent necessary to sustain a manslaughter conviction. According to Utah Code Ann. § 76–5–205 (1990), a person is guilty of manslaughter where the actor "recklessly causes the death of another." The code further notes that a person acts recklessly,

> with respect to circumstances surrounding his conduct or the result of his conduct[,] when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Utah Code Ann. § 76–2–103(3) (1990). *See State v. Wessendorf,* 777 P.2d 523, 525 (Utah App.), *cert. denied,* 781 P.2d 878 (Utah 1989).

In other words, "the mens rea of recklessness for manslaughter requires that defendant be aware of but consciously disregard a substantial risk that the result would occur." *Wessendorf,* 777 P.2d at 525. *See State v. Howard,* 597 P.2d 878, 881 (Utah 1979).

Defendant admits to striking the infant at least once the evening she died. The medical examiner's testimony, apparently credited by the jury, established that in all likelihood Ashlee had been struck several times immediately prior to her death. Defendant must have known that continually striking a three-month-old infant with adult force created a substantial risk of severe injury or death. In fact, defendant did not testify to a belief that his beating would not seriously injure the child, but rather that he did not know why he hit her, just that he was "frustrated," "[e]verything was just building up" inside of him, and he "just wanted it to stop."

■ In addition, two experts testified that Ashlee was suffering from "battered child syndrome," a medically recognized condition denoting that a child has suffered from a "pattern of abuse." *State v. Tanner,* 675 P.2d 539, 543 (Utah 1983). While defendant argues that the court erred in admitting such evidence, *Tanner* clearly allows its introduction to show "absence of accident or mistake . . . opportunity, knowledge or the identity of the defendant as the person responsible for the crime charged." *Id.* at 546–47. *See State v. Allen,* 839 P.2d 291, 297 (Utah 1992). The trial court properly admitted evidence that Ashlee was a victim of "battered child syndrome" in order to establish defendant's reckless state of mind. Thus, even if defendant may not have known that a single incident of abuse would endanger the child's life, surely he was aware that continued and cumulative abuse would.

■ Given the evidence of Ashlee's injuries, the fact that defendant was Ashlee's primary caregiver during the time the injuries occurred, and defendant's admission to at least once striking the child out of "frustration," we cannot conclude that the "evidence is so lacking and insubstantial that a

reasonable person could not possibly have reached a verdict [of guilt] beyond a reasonable doubt." *Tanner,* 675 P.2d at 550. Therefore, we will not disturb the jury's verdict on appeal. *See id.*

## VOIR DIRE

■ Defendant's claim that the trial court erred in not dismissing certain jurors for cause during voir dire is equally without merit. As previously noted, the trial court has discretion whether to dismiss prospective jurors for cause, and as the reviewing court, we must "presume that the discretion of the trial court was properly exercised unless the record clearly shows the contrary." *State v. Jonas,* 793 P.2d 902, 906 (Utah App.) (quoting *Goddard v. Hickman,* 685 P.2d 530, 534–35 (Utah 1984)), *cert. denied,* 804 P.2d 1232 (Utah 1990). *See State v. Boyatt,* 854 P.2d 550, 552 (Utah App.), *cert. denied,* 862 P.2d 1356 (Utah 1993). However, when a juror's responses on voir dire or other facts suggest potential bias, the trial court must probe until the suggestion of bias has been dispelled. *Jonas,* 793 P.2d at 906. *See State v. Woolley,* 810 P.2d 440, 442–44 (Utah App.), *cert. denied,* 826 P.2d 651 (Utah 1991). Defendant claims that several jurors indicated they were biased through their answers to the court's questions, and that the court should therefore have dismissed them for cause. However, after reviewing the record and defendant's argument, we can only conclude that the trial court properly interrogated the prospective jurors to detect whether any bias existed, and in those instances where any bias was suggested, thoroughly pursued such suggestion until convinced that no bias was present. Accordingly, the trial court did not abuse its discretion in denying defendant's motion to dismiss the various prospective jurors for cause.

## MISTRIAL

■ Defendant also claims the trial court erred in denying his motion for a mistrial following the court's dismissal of a juror for misconduct. Even if the motion was not withdrawn, we conclude the trial court did not abuse its discretion in denying defendant's motion. *See State v. Swain,* 835 P.2d 1009, 1010 (Utah App.1992).

The court dismissed juror Bunot for making an inappropriate statement, suggestive of a predisposition toward finding defendant guilty, to alternate juror Rasmussen. Upon hearing the statement, Rasmussen reported it to the trial court. At that point, defense counsel moved for a mistrial. Without ruling on the motion, the trial court excused Bunot and individually questioned each of the remaining jurors about any comments they might have heard, and their perceptions concerning the fairness of the proceedings. Only one of the jurors had heard the comment, which she found to be "in very poor taste," and stated that she still perceived herself to be fair and impartial. The trial court replaced Bunot with alternate juror Rasmussen, who satisfied the court that the statement had not affected his ability to weigh the evidence and did not suggest to him what the outcome of the trial should be.

Following the court's careful inquiry, defense counsel did not renew her motion for mistrial, nor even imply that any remaining juror was other than impartial. From all that appears, defendant was satisfied with the additional scrutiny and at least tacitly withdrew the motion for a mistrial. In any case, given the trial court's steps to uncover any taint of bias on the part of the remaining jurors or Bunot's replacement, we conclude that the trial court did not abuse its discretion in refusing to grant defendant's motion for a mistrial.

## CONCLUSION

The jury had sufficient evidence to find defendant guilty of reckless manslaughter in the death of his child. The trial court did not err in admitting evidence of "battered child syndrome" in order to establish defendant's reckless state of mind. Further, the trial court did not abuse its discretion in refusing to dismiss certain jurors for cause and in denying defendant's motion for a mistrial,

where the court made sufficient efforts to dispel any suggestion of bias, both in the prospective jurors and in the remaining jurors following the dismissal of one juror for misconduct. Accordingly, defendant's conviction is affirmed.

GREENWOOD and RUSSON, JJ., concur.