2003 UT App 1

**STATE of Utah, Appellant,**

v.

**José Daniel ROBINSON, Appellee.**

No. 20020027–CA.

Court of Appeals of Utah.

Jan. 3, 2003.

Mark L. Shurtleff, Attorney General, and Joanne C. Slotnik, Asst. Attorney General, Salt Lake City, for Appellant.

Shelden R. Carter, Harris & Carter, Provo, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

ORME, Judge:

¶ 1 The State appeals a magistrate's dismissal of a manslaughter charge against José Robinson, which arose from the deadly combination of drinking alcohol and playing with a gun. We affirm.

## BACKGROUND

¶ 2 In the early morning of June 10, 2000, José Robinson and Christina Galbraith, his sister-in-law, were drinking beer and examining Mr. Robinson's handgun. While Ms. Galbraith was handling the gun, Mr. Robinson heard the slide activate. He then took the gun from her. Noticing that the gun appeared to be jammed, he pulled back the slide, ejecting a bullet from the gun. Mr. Robinson put the bullet back into the clip, and the next thing he remembers is hearing the gun fire. He then looked over at Ms. Galbraith and noticed that she was slumped over the arm rest of the couch. The bullet had hit her just below her left ear, and she died shortly thereafter. Investigators who later arrived on the scene determined Mr. Robinson's blood alcohol level to be .10.

¶ 3 Believing Mr. Robinson's conduct to be reckless, the State charged him with manslaughter. After considering the State's evidence at a preliminary hearing, however, a magistrate dismissed the charge, choosing not to bind Mr. Robinson over for trial. The State now appeals the dismissal.

## STANDARD OF REVIEW AND APPLICABLE LAW

■ ¶ 4 "The determination of whether to bind a criminal defendant over for trial is a question of law. Accordingly, we review that determination without deference to the court below." *State v. Clark*, 2001 UT 9, ¶ 8, 20 P.3d 300 (citations omitted).

■ ¶ 5 "To bind a defendant over for trial, the State must show 'probable cause' at a preliminary hearing by 'present[ing] sufficient evidence to establish that "the crime charged has been committed and that the defendant has committed it." ' " *Id.* at ¶ 10 (quoting *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995) (quoting Utah R.Crim. P. 7(h)(2))) (alteration in original). The "quantum of evidence necessary to support a bindover" is that amount necessary "to support a *reasonable belief* that an offense has been committed and that the defendant committed it." [1] *Id.* at ¶ 16 (emphasis added). In assessing the evidence presented, the magistrate " 'must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution.' " *Id.* at ¶ 10 (quoting *State v. Hester*, 2000 UT App 159, ¶ 7, 3 P.3d 725).

■ ¶ 6 Because the State "must ... produce ' "believable evidence of all the elements of the crime charged," ' " *id.* at ¶ 15 (quoting *State v. Emmett*, 839 P.2d 781, 784 (Utah 1992) (quoting *State v. Smith*, 675 P.2d 521, 524 (Utah 1983))), we review the elements of manslaughter. A person commits manslaughter if he or she "recklessly causes the death of another." Utah Code Ann.

1. This preliminary hearing standard for probable cause is the same standard that applies to issuing an arrest warrant. In *State v. Clark*, 2001 UT 9, 20 P.3d 300, the Utah Supreme Court recognized that there had been some confusion as to "what quantum of evidence is sufficient to support a finding of probable cause at the preliminary hearing stage of a prosecution." *Id.* at ¶ 11. After reviewing the various standards that had been articulated over the years, the Court ultimately concluded the following:

> [W]e see no principled basis for attempting to maintain a distinction between the arrest warrant probable cause standard and the preliminary hearing probable cause standard.... Therefore, at both the arrest warrant and the preliminary hearing stages, the prosecution

must present sufficient evidence to support a reasonable belief that an offense has been committed and that the defendant committed it. *Id.* at ¶ 16. The Court acknowledged that this rule imposes a " 'relatively low' " burden upon the State at preliminary hearings. *Id.* at ¶ 10 (quoting *Evans v. State*, 963 P.2d 177, 182 (Utah 1998)). "Yet, '[t]he magistrate's role in this process ... is not that of a rubber stamp for the prosecution.' " *Id.* (quoting *State v. Hester*, 2000 UT App 159, ¶ 7, 3 P.3d 725, *cert. denied*, 9 P.3d 170 (Utah 2000)). The magistrate is still expected to "fulfill the primary purpose of the preliminary hearing, [which is to] 'ferret[ ] out ... groundless and improvident prosecutions.' " *Id.* at ¶ 16 (quoting *State v. Anderson*, 612 P.2d 778, 783–84 (Utah 1980)) (ellipses in original).

§ 76–5–205(1)(a) (Supp.2002). Section 76–2–103(3) provides that a person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Utah Code Ann. § 76–2–103(3) (1999). Determining whether a person acts recklessly under this definition "presents a conjecture-laden inquiry, involving both objective and subjective elements." *State v. Singer*, 815 P.2d 1303, 1307 (Utah Ct.App.1991). *See*

*State v. Wessendorf*, 777 P.2d 523, 526 (Utah Ct.App.) ("[T]he trial court did not err in referring to an objective as well as a subjective standard, as both are involved in applying the manslaughter statute."), *cert. denied*, 781 P.2d 878 (Utah 1989). Two subjective elements of the definition are whether the person actually *perceived* the risk that his or her actions presented and whether he or she *consciously* disregarded it.[2] *See State v. Howard*, 597 P.2d 878, 881 (Utah 1979) (recognizing that whether an actor perceived and disregarded a risk "is purely [a question] of subjective intent in the mind of the actor"); *State v. Martinez*, 2000 UT App 320, ¶ 12 n. 5, 14 P.3d 114 ("[L]iability for criminal recklessness ... require[s] actual knowledge or awareness and thus turn[s] on the

2. As is "often the case with respect to state of mind questions, objective evidence of the surrounding circumstances may be weighed in making the factual determination." *People v. Licitra*, 47 N.Y.2d 554, 419 N.Y.S.2d 461, 393 N.E.2d 456, 459 (1979). Even so, the determination to be made is whether the defendant was subjectively "aware of but consciously disregard[ed]" the risk his actions posed. Utah Code Ann. § 76–2–103(3) (1999).

It is this perception of the risk that marks the difference between criminal negligence and recklessness. As the Utah Supreme Court recognized, the "difference between reckless and criminally negligent conduct is that under the former, one perceives a risk and consciously disregards it, whereas under the latter, one fails to even perceive the risk.... The distinction, then, is merely one of the degree of perception of the risk." *State v. Dyer*, 671 P.2d 142, 148 (Utah 1983). *See* Utah Code Ann. § 76–2–103(3) & (4) (1999) (defining recklessness to require that one be "aware of" a risk but "consciously disregard[ ]" it and defining criminal negligence to require that one merely "ought to be aware of" a risk); *State v. Standiford*, 769 P.2d 254, 267 (Utah 1988) ("The sole difference between reckless manslaughter and negligent homicide is whether the defendant actually knew of the risk of death or simply was not, but should have been, aware."); *State v. Howard*, 597 P.2d 878, 881 (Utah 1979) ("The difference between the minimum required *mens rea* of recklessness for manslaughter and criminal negligence for negligent homicide is simply whether the defendant was *aware, but consciously disregarded* a substantial risk the result would happen, or was *unaware but ought to have been aware* of a substantial risk the result would happen.") (emphasis in original). This distinction is not unique to Utah. *See, e.g.*, Ala.Code § 13A–2–2 cmt. (1994) ("The reckless offender is aware of the risk and 'consciously disregards' it. On the other hand, the criminally negligent offender is not aware of the

risk created ('fails to perceive') and, therefore, cannot be guilty of consciously disregarding it."); *People v. Brito*, 232 Cal.App.3d 316, 283 Cal. Rptr. 441, 443 n. 4 ("An essential distinction between second degree murder based on implied malice[, defined as conscious disregard for life,] and involuntary manslaughter based on criminal negligence, is that in the former the defendant subjectively realized the risk to human life created by his conduct, whereas in the latter the defendant's conduct objectively endangered life, but he did not subjectively realize the risk."), *cert. denied*, No. S022570, 1991 Cal. LEXIS 4790 (Oct. 16, 1991); *State v. Ray*, 228 Conn. 147, 635 A.2d 777, 781 (1993) ("[T]he issue that distinguishes the two criminal offenses is whether the defendant subjectively realized and chose to ignore a substantial risk of death or merely failed to realize that he was creating a substantial risk of death.") (citation omitted); *Saunders v. State*, 871 S.W.2d 920, 924 (Tex.App.1994) ("The difference between the culpable mental states for involuntary manslaughter and criminally negligent homicide is appreciation of the risk. Recklessness requires that one perceive the risk and disregard it; in criminal negligence the actor simply does not perceive the risk that an ordinary person would recognize."), *aff'd*, 913 S.W.2d 564 (Tex.Crim.App.1995); 1 Charles E. Torcia, Wharton's Criminal Law § 27, at 170 (15th ed. 1993) ("The difference between the terms 'recklessly' and 'negligently' ... is one of kind, rather than of degree. Each actor creates a *risk* of harm. The reckless actor is *aware* of the risk and disregards it; the negligent actor is *not aware* of the risk but should have been aware of it.") (emphasis in original).

As will be explained, the testimony provided by the State's only witness in this case precludes any reasonable belief that Mr. Robinson actually perceived any risk. Therefore, we cannot conclude that there exists a reasonable belief that his conduct was reckless.

defendant's subjective mental state.") (citations omitted), *aff'd*, 2002 UT 80, 52 P.3d 1276. The magnitude of the risk itself, on the other hand, is an objective matter. *See Wessendorf*, 777 P.2d at 526 ("[T]he statutory language includes application of an objective standard, i.e., that '[t]he risk in both cases must be of such a degree that an ordinary person would not disregard or fail to recognize it.'") (quoting *State v. Dyer*, 671 P.2d 142, 148 (Utah 1983)).

## ANALYSIS

¶ 7 Although it is undisputed that Mr. Robinson contributed to Ms. Galbraith's death, we hold that the State did not establish probable cause that Mr. Robinson acted recklessly in doing so. For whatever reason, the only evidence the State presented at the preliminary hearing was the testimony of Detective Don Grothe, who had investigated the incident. During direct examination, Detective Grothe recited his understanding of what had occurred and also said the following: "[Mr. Robinson] stated that when he retrieved the gun from [Ms. Galbraith], there was nothing that caused him to think that the gun—well that she had activated a round or loaded it or anything like that."

¶ 8 Then, during cross-examination, the following exchange took place between Mr. Robinson's counsel and Detective Grothe:

Q. Detective, what did he tell you that would make you think that he knew that the gun was loaded or in a firing position?

A. There was nothing that made him think that.

Q. He didn't think it was loaded?

A. No.

. . . .

A. . . . He told me that when he retrieved the gun . . . he assumed that it was empty and didn't have a round in the chamber, and it didn't have a clip in the gun. That's what he stated.

Q. There was no clip in the gun?

A. That's what he stated.

Q. And he advised you he assumed the gun was safe?

A. Yes.

. . . .

Q. Is there anything to suggest in any form from anybody or any evidence that this was an intentional act?

A. No.

Q. Would it be fair to describe this, that this was an accident?

A. Yeah. There's nothing at this point that would indicate any criminal intention that he fired the gun with the intent to hurt her. Yes, that would be my opinion.

Q. And you're telling me from your information you've gathered that he did not know the gun was loaded or had a bullet in the firing chamber?

A. Yes.

. . . .

Q. What information do you have to suggest that Mr. Robinson knew the gun to have live ammunition in it that could be fired?

A. There was no information that I have that would have confirmed for sure that he knew that it was loaded.

. . . .

Q. Did you make any examination of the gun as to its malfunctioning abilities, or how—was it functioning properly? Was there any reason to explain why that bullet would be in that firing position?

A. I'm not a gun expert per se, but from what I saw, it appeared that it had been jammed. It was a round that had been spent that was in the process of being ejected out of the gun and got jammed in there. Detective Orndorff, who is a much more skilled person in firearms, he's an instructor, and he looked at the gun closer than I did.

Q. What information did Detective Orndorff give you?

A. Other than what I just said, I don't recall any.

Q. That it was jammed?

A. Yeah.

¶ 9 Given this testimony, we simply cannot conclude that the State "present[ed] sufficient evidence to support a reasonable belief" that Mr. Robinson acted recklessly in causing Ms. Galbraith's death. *State v. Clark*, 2001

UT 9, ¶ 16, 20 P.3d 300. Detective Grothe's testimony that Mr. Robinson did not know the gun was loaded and that he thought the gun was safe, as well as his explanation of how the bullet likely came into firing position, falls well short of establishing a reasonable belief that Mr. Robinson was "aware of" any risk, much less that he was "aware of but consciously disregard[ed] a substantial and unjustifiable risk." Utah Code Ann. § 76–2–103(3) (1999). In fact, it refutes such a conclusion.

¶ 10 We emphasize that our decision is highly dependent upon the strategy pursued by the State, and in particular the fact that Detective Grothe's testimony is the only evidence that the State presented at the preliminary hearing. At that hearing, the State said it felt confident that it "could make probable cause with one detective," but it failed to do so. In this case we are faced with one person's testimony, and that testimony, fairly viewed, suggests that Mr. Robinson did not act recklessly.[3]

¶ 11 Even "view[ing] all evidence in the light most favorable to the prosecution and . . . draw[ing] all reasonable inferences in favor of the prosecution," *Clark,* 2001 UT 9 at ¶ 10, 20 P.3d 300, the evidence provided in this case simply does not support a probable cause determination. The inferences that the State asks us to make, that Mr. Robinson "knew that the gun contained at least one live round" and that he was aware that his

actions would cause the gun to fire, would not be "reasonable inferences" flowing logically from the evidence because such inferences would directly contradict the only testimony that was presented in this case by the State's own witness. That witness characterized Mr. Robinson as having no perception of any risk that the gun was ready to fire a live round. On the contrary, it establishes not that Mr. Robinson perceived a risk and consciously disregarded it, but rather that he failed even to perceive the risk. *See supra* note 2.

## CONCLUSION

¶ 12 Because the State did not produce enough evidence at the preliminary hearing "to support a reasonable belief" that Mr. Robinson was "aware of but consciously disregard[ed]" the risk that his handgun was ready to fire, we affirm the magistrate's dismissal of the manslaughter charge against him.

¶ 13 I CONCUR: JUDITH M. BILLINGS, Judge.

DAVIS, Judge (concurring):

¶ 14 I write separately to highlight concern I have with the lowered probable cause standard for bindover. Part of the rationale for a lowered standard is the so-called presumption "that the prosecution's case will only get

---

**3.** It surely is tempting to simply conclude that anyone who handles a firearm in any manner other than to treat it as a loaded weapon that could fire at any instant is reckless, especially if they are drunk while doing so. Indeed, this statement is true when using the word "reckless" in its colloquial sense, and many hunter safety and firearms instructors would undoubtedly agree with this definition. However, the definition of "reckless" that we are bound to follow—the definition set forth in Utah Code Ann. § 76–2–103(3) (1999)—is narrower. As discussed earlier in this opinion, the statutory definition requires that one actually and subjectively perceive a risk and consciously disregard it. When one does not perceive any risk, his or her conduct will be, at most, criminally negligent. *See* Utah Code Ann. § 76–2–103(4) (1999) (defining criminal negligence to include situations in which one "ought to be aware of" a risk).

Past case law suggests that if one purposefully aims a gun at a person or at a location where people are likely to be and the gun discharges,

courts are willing to infer that the actor was aware of a risk and was, therefore, reckless. *See, e.g., State v. Singer,* 815 P.2d 1303, 1306–09 (Utah Ct.App.1991) (upholding a manslaughter conviction when the defendant shot and killed an officer while, he claimed, merely aiming at a police dog). However, in cases such as the present one, in which it is undisputed that the aiming was inadvertent, such an inference does not follow. *See, e.g., People v. Montanez,* 41 N.Y.2d 53, 390 N.Y.S.2d 861, 359 N.E.2d 371, 374–75 (1976) (reversing a conviction for reckless manslaughter because even if proven, the fact that "the weapon was in the defendant's hand at the time of the shooting" would not be sufficient by itself to prove recklessness). *Cf. People v. Bernier,* 204 A.D.2d 732, 612 N.Y.S.2d 629, 629 (affirming a conviction for criminally negligent homicide when a security guard, holding a shotgun across his chest and using it to push back a crowd, accidentally shot and killed a person), *cert. denied,* 84 N.Y.2d 822, 617 N.Y.S.2d 142, 641 N.E.2d 163 (1994).

stronger as the investigation continues." *Evans v. State*, 963 P.2d 177, 182 (Utah 1998). This presumption has no legal or factual basis and should not be relied upon.

¶ 15 A presumption is a "legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts." Black's Law Dictionary 1203 (7th ed.1999); *see also* Webster's Ninth New Collegiate Dictionary 932 (9th ed.1986) (defining presumption as "a legal inference as to the existence or truth of a fact not certainly known that is drawn from the known or proved existence of some other fact").

¶ 16 Several Utah cases rely in whole or in part on the presumption that the " 'prosecution's case will only get stronger as the investigation continues.' " *State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (quoting *Evans*, 963 P.2d at 182 (other citation omitted)). Utah case law has incorporated this presumption from a line of Oklahoma cases that presume " 'the State will strengthen its evidence at trial.' " *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995) (quoting *Diaz v. State*, 728 P.2d 503, 510 (Okla.Crim.App.1986)).

¶ 17 The Oklahoma presumption seems to have originated in *McAllister v. State*, 97 Okla.Crim. 167, 260 P.2d 454 (1953). In *McAllister*, the Oklahoma appellate court stated that "[t]he presumption is that the State would strengthen its evidence at trial by production of everything favorable to support the charge." *Id.* at 465. However, the court cited no legal or factual basis to support this assumption.

¶ 18 The Utah Supreme Court, in citing the baseless Oklahoma presumption, dropped the qualification set forth in *McAllister*. Instead of simply presuming the prosecution's case would improve at trial because the prosecution would produce "everything favorable to support the charge," *id.*, our supreme court ruled that the prosecution's case would "only get stronger as the investigation continue[d]." *Clark*, 2001 UT 9 at ¶ 10, 20 P.3d 300 (quotations and citations omitted).

¶ 19 Now, the presumption is embedded in Utah jurisprudence. However, it has no factual or legal basis to support it. The presumption that "the prosecution is entitled to hold the defendant on a lesser standard while it hunts for additional evidence ... may have been supportable in the middle of the last century when the police were not as sophisticated as they are today and when it may have been easier to flee to avoid prosecution." Kenneth Graham & Leon Letwin, *The Preliminary Hearings in Los Angeles: Some Field Findings and Legal–Policy Observations*, 18 UCLA L.Rev. 635, 692 (1971). However, today, "unless the statute of limitations is about to run, it is difficult to defend binding over the defendant while the police search for evidence that will support a conviction." *Id.* In fact, "[a]s a practical matter, in most cases police investigation ceases once the complaint has been issued." *Id.*

¶ 20 In addition, the presumption is not based on known or proven facts. *McAllister* offers no known or proven facts to support its presumption, and the Utah Supreme Court simply relies on *McAllister* and its progeny to support its presumption. *See Clark*, 2001 UT 9 at ¶ 10, 20 P.3d 300; *see also Evans*, 963 P.2d at 182.

¶ 21 Therefore, although I concur in the main opinion, which correctly states the law, I believe our supreme court, at its earliest opportunity, should revisit the so-called presumption that the prosecution's case will only get stronger as the investigation continues.